UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| AARON RUBENSTEIN,<br><br>       Plaintiff,<br>  v.<br><br>RICHARD N. AZAR, II,<br>RAD2 MANAGEMENT, LLC,<br>RAD2 MINERALS, LTD., and<br>SEGUNDO RESOURCES, LLC,<br><br>       Defendants,<br><br>       and<br><br>CAMBER ENERGY, INC.<br>(f/k/a LUCAS ENERGY, INC.),<br><br>       Nominal Defendant. | No. 5:17-cv-00962-FAB<br><br>ECF Case |

**JOINT ADVISORY REPORT OF CONFERENCE
ON PLAINTIFF'S MOTIONS TO COMPEL DEPOSITIONS;
EXTEND DISCOVERY & DISPOSITIVE MOTION DEADLINES**

    Pursuant to the Court's Order (Dkt No. 41), the parties conducted a conference by telephone on June 26, 2018 to discuss outstanding issues raised by Plaintiff's Motion to Compel, for the purpose of preparing this Joint Advisory Report in advance of the hearing to be held before Magistrate Judge Chestney on Monday, July 2, 2018.

**PARTIES & PARTICIPANTS**

- *Attorneys for Plaintiff*: Miriam Tauber, David Lopez

- *Attorney for Defendants*: William L. Sessions

**DISCUSSION**

I.   **Outstanding Issues Relating to Plaintiff's Motion to Compel Additional Discovery from Defendants' Designated Accountant**

    a.   **Notice to Plaintiff of Discovery Sought**

Plaintiff's position:

Defendants' SEC filings and all contemporaneous transaction documents executed and produced by Defendants expressly and consistently state that the Series B Preferred shares were "sold" by Defendants on or around November 2, 2016, as "payment" in satisfaction of an $8.8 million debt previously owed by Defendants under the Lacey Note (i.e., exactly what Plaintiff alleges in the Complaint). Plaintiff had no basis for questioning the veracity of these documents until Azar's deposition, when he claimed that the transfer was not "payment" but rather constituted "security" or "collateral" for the debt.

The amended answer denied Plaintiff's allegation that the shares were sold as payment on the $8.8 million Lacey Note, without explaining the basis for this denial, but Defendants did not state or otherwise suggest, either in their answer or in their discovery responses, that the reason for this denial related to any purported "security" or "collateral" arrangement. Moreover (as Defendants point out), the Note itself contained an *optional* security provision, which specifically appeared not to have been exercised—that provision required the execution of a form of security agreement referenced as attached "Exhibit A," but which was not attached to the executed copy of the Note or produced to Plaintiff (by Defendants or any of their non-party witnesses, including the accountant identified on their R. 26 disclosures).

Until Azar's deposition, Plaintiff had no basis for seeking discovery relating to a security agreement or outstanding debt owed by Defendants—especially because all of the evidence produced affirmatively indicated that the "optional" security was not provided, and that

2

the debt was paid by Defendants and assigned to another "Borrower." Defendants nonetheless suggest that Plaintiff should have somehow asked these questions anyway. Plaintiff respectfully submits that discovery is not a guessing game. Defendants are required to make their assertions and defenses clear to Plaintiff and to produce any evidence that exists in support of Defendants' version of the facts; they are not permitted to withhold relevant information until the clock runs out on discovery and then claim that Plaintiff did not ask the right questions.

<u>Defendants' position</u>:

Plaintiff's Motion fails to demonstrate the exercise of diligence and thoroughness in attempting to meet the discovery deadlines set by the Court, and that despite such diligence, the discovery deadline could not have reasonably been met. *S & W Enters., L.L.C. v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) Demonstrating diligence is the critical requirement for demonstrating "good cause" for extending a scheduling deadline. *Ebel v. Eli Lilly & Co.*, 248 F.R.D. 208 (S.D. Tex. 2007).

To recover under § 16(b), Rubenstein must prove that Azar and his related entities: (1) purchased an equity security, (2) sold the same, (3) while an insider or beneficial owner, (4) within a six-month period. *Sun River Energy, Inc. v. McMillan*, 3:13-cv-2456-D, 2014 WL 4771852 at *6 (N.D. Tex. Sept. 25, 2014) (citing *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998). Plaintiff has alleged that Defendant Azar profited from a "short swing" transaction in which he exchanged Camber Energy stock for release or satisfaction of an $8.8 Million debt. Plaintiff asserts that he must prove only that the defendant was an insider of a public company who profited from the purchase and sale of the company's stock or derivative securities within a period of less than six months. Plaintiff's Complaint, ¶2-18, pp. 1-5 (Dkt. #1) There are exceptions to section 16(b), among which is that stock given as a pledge for securities

3

is not a sale under section 16(b). *Donaghue v. Murdock*, 2013 U.S. Dist. LEXIS 110605, at *34 n.8 (S.D.N.Y. Aug. 16, 2013); *Alloys Unlimited, Inc. v. Gilbert*, 319 F. Supp. 617, 619 (S.D.N.Y. 1970).

Plaintiff argues he was justified in not seeking the discovery he now wants because there was no basis for questioning the veracity of SEC filings and all contemporaneous transaction documents executed and produced by Defendants until Azar's deposition. This belies the fact that before filing this lawsuit and during the early phases of a 4 1/2-month period of discovery agreed upon by the parties, Plaintiff was aware that Defendant Azar contended the stock was not delivered or sold in exchange for or consideration of elimination of the $8.8 Million note or as satisfaction for extinguishment of any debt, and that he had merely substituted restricted shares for tradable common stock of an equal value. Plaintiff's Motion, pp. 2,3 (Dkt. #35); *Def. Ex. M, Def. App. 048;* Defendants' Original Answer, ¶14, p. 4 (Dkt. #5); Defendants' First Amended Answer, ¶¶ 13, 14, pp 3-4 (Dkt. #24). These assertions put Plaintiff on notice well in advance of the discovery deadline that Defendant Azar challenged Plaintiff's claims that Azar had profited from the purchase and sale of Camber stock and had received release of his debt to Lacey. Plaintiff offers no credible proof that he was misled, confused, shortchanged or otherwise prejudiced by Defendant's pleadings or discovery production and responses, or actions of Defendants' counsel with regard to documents and testimony he now seeks from Defendants' CPA.

Plaintiff's limited discovery strategies were driven by an unaltered, pre-conceived notion that Defendants' disclosures, document production, and written discovery responses were enough to disprove Defendants' claimed defenses and required little-to-no additional proof. Plaintiff has conceded that he elected to look only to SEC filings and certain produced documents for proof of his claims and decided to defer further inquiry probing Azar's defenses until the time

of Azar's deposition. In compliance with Rule 26(a), Defendant disclosed four categories of documents and produced 109 pages of documents. Def. Ex. F, App. 024 (Dkt. #40-1). Plaintiff submitted two document requests to Defendants. The first sought documentation of agreements and documents governing, memorializing or reflecting Defendants' agreement to transfer 250,000 shares of Camber Preferred Stock as payment of the $8.8 Million Note. The second sought documents evidencing "all binding and executed agreements and any other documents governing, memorializing, or reflecting Defendants' agreement to acquire (or re-acquire) 106 508 shares of Camber Series B Preferred Stock from Lacey, in exchange for Defendants' transfer of 760,997 shares of Camber Common Stock to Lacey, on or around January 5, 2017…" Def. Ex. J, Def. App. 037-038. (Dkt. #40-2) Moreover, Plaintiff's sole interrogatory to Defendants did not seek information about Defendants' defenses or any aspect of the stock transactions or debt. After lodging objections to the requests, Defendants stated that they had produced all documents that they believed were responsive. *Ibid.* These responses were served upon Plaintiff on March 16, 2018 – three months before discovery closed. Plaintiff did not submit further document requests or interrogatories to Defendants and did not challenge Defendants' pleadings, disclosures, or document production before the close of discovery. Plaintiff did not probe Richard Azar to determine whether Defendants' discovery responses were truthful and accurate. Plaintiff now claims surprise and asserts Defendants withheld relevant information and attempted to run out the discovery clock. Plaintiff decided the means, methods, and topic for his discovery in this case. He has advanced no credible evidence to support the accusation that Defendant's discovery responses were untimely, incomplete, misleading, or otherwise less than required by the rules and orders of this Court. Nor has Plaintiff explained how Defendants prevented Plaintiff from timely seeking the additional discovery from Defendants that he now wants this Court to order.

### b. Specificity or Speculative Nature of Discovery Sought

<u>Plaintiff's position</u>:

Based on Azar's testimony that Defendants' transfer of Series B shares constituted collateral or security under the Note—an assertion that is not supported by any document, and contradicted by every document that Defendants and their non-party witnesses produced to Plaintiff—Plaintiff seeks discovery of all documents supporting the existence of a security arrangement or outstanding debt owed by any Defendant (or their affiliates) in connection with the Lacey Note. Although Defendants' motion suggests that Plaintiff did not previously seek this information, on their conference the parties agreed that Plaintiff's discovery requests, issued to Defendants and by subpoena to various non-parties including Thomas Lisa and Todd Engel (Defendants' designated accountant), which incorporated and appended the broad definitions of "relevant" materials provided by federal and local rules (in order to resolve the "specificity" objections raised by Defendants in opposing this Motion), included a request for the security and debt accounting information that Plaintiff seeks to compel—and that Todd Engel responded that he did not have any accounting information about the Note transactions (including any outstanding debt under the Note).

Azar's testimony required this Motion by suggesting that these accounting documents must exist, which conflicts with Todd Engel's response. Plaintiff's identification of Defendants' retired accountant Dan Rorie as a potential source of discovery is based on Azar's own suggestion that any missing documents (or knowledge of the existence of potentially missing documents) may be within the possession of Dan Rorie. That said, Plaintiff does not intend to harass non-parties for information they do not have. For that reason, Plaintiff asks Defendants for their cooperation in locating the relevant accounting information and identifying the accountant

6

with knowledge of relevant facts (or else for their confirmation that these documents and facts do not exist).

Defendants' position:

Plaintiff has not identified any portion of Richard Azar's deposition testimony that suggests his accountant (and/or the accountant's firm) actually have any "accounting documents" that conflict with Todd Engel's response to Plaintiff's request for documents. *See* Pltf. Ex. A, pp. 8,9 (Dkt. #36-1) Plaintiff's document subpoena was served upon Todd Engle and his accounting firm. Def. Ex. Q, App 066 ( Dkt. #40-5). Mr. Engle responded for himself and his accounting firm. In his e-mail to Plaintiff's counsel, Mr. Engel states unequivocally that he doesn't have any documents related to the transaction that have not already been produced to Plaintiff:

> I have the same emails included in what Ms. Tauber included with the emailed Subpoena. I do not have any documents related to any agreement between Mr. Azar and the Tom she refers to in the email. Nor do I have between Mr. Azar and the Tom she refers to in the email. Nor do I have any agreements with Mr. Lacey as it relates to any monies owed to or due from him, nor do I know him or even where he lives. Thus I have never reviewed any Note documents related to any of the information Ms. Tauber is requesting because I have never been provided any such documentation in any form. Her comment "which were reviewed by you around August 2017", is erroneous and inaccurate. Again, I have never received any documents related to any transactions among these parties, and thus could never (nor would I ever) have been in a position to review them. The extent of documents I have seen, relate to searches of the public filings contained on the SEC website hVps://www.sec.gov/cgibin/browsedgar?ac?on=getcompany&CIK=0001309082 &owner=exclude&count=40&hidefilings=0, and only for the purpose of comparing filings to the purchase and sale agreement and only in relation to preparing the applicable Federal Tax Returns for the year ended December 31, 2016. Please let me know if you need further information and please advise on what additional action is needed from me to properly comply with the aforementioned Subpoena.

Plaintiff has not pointed to any testimony from Richard Azar or any verifiable information from any other reliable source that the documents sought from Mr. Engel and his accounting firm exist or are in their possession.  The notion that Dan Rorie

has information concerning this case is beyond remote. *See,* Plaintiff's Exhibit B, Azar Dep. Tr. 103:23—104:16.

### c. Timing of Plaintiff's Request; Prejudice to Defendants

<u>Plaintiff's position</u>:

The information sought by this Motion should have been produced in response to Plaintiff's discovery requests, and Plaintiff was not required to more specifically request information that the discovery produced suggested did not exist until Azar's testimony contradicted the facts previously disclosed to Plaintiff. Defendants' request for scheduling accommodations surrounding Azar's deposition included the implication that any delay caused by accommodating these requests, including in connection with Plaintiff's scheduling and travel options, would not be cited as causing prejudice to Defendants. Plaintiff notified Defendants of his intention to depose Azar in Plaintiff's initial disclosures at the outset of discovery, and Plaintiff followed up on that request at every discussion held concerning discovery until the deposition was scheduled. The delays in this case were not caused by a lack of diligence but were the result of mutual extensions of professional courtesy, which are encouraged by the Court and should not be held against either party.

<u>Defendants' position</u>:

The nature and scope of Plaintiff's discovery requests and Defendants' objections and responses are address above.  The timing of Richard Azar's deposition was reached after a conference between counsel in a May 7, 2018 exchange of e-mails between counsel regarding timing of the Azar deposition, in which the parties discussed setting the deposition for late May. Those e-mails make it clear that Plaintiff's counsel was given a choice of May 29th, May 30th, or June 5th.  Def. App. 086-087 (Dkt. 40-7). Plaintiff's counsel chose the later date.

8

**II.     Motion to Compel Discovery from Thomas Lisa**
(pursuant to the Order on Motion Plaintiff filed as ancillary EDNY proceeding seeking an overlapping extension of the discovery cut-off and dispositive motion deadline, referenced in and attached as a supplement to the pending Motion)

Plaintiff's position:

Defendants are aware that Thomas Lisa has actively avoided Plaintiff's efforts to serve him with discovery subpoenas. In discussing this issue, Defendants' counsel agreed that Plaintiff should not be required to effect personal service on a hostile witness and represented that Defendants would endeavor to "act as intermediary" to coordinate Lisa's response to Plaintiff's outstanding and subsequent discovery requests. Defendants did not communicate that their position on the appropriate discovery procedure with respect to Lisa had subsequently changed, notwithstanding Plaintiff's express requests—beginning on May 1, 2018—for Defendants to notify Lisa of Plaintiff's intent to depose him and to facilitate the selection of a mutually convenient date for Lisa's deposition.

Given that Defendants have had notice of Plaintiff's intent to depose Lisa for months and have acknowledged Lisa's determination to evade personal service, Defendants' insistence that Lisa's deposition can effectively be noticed only by personal service of a subpoena issued more than thirty days prior to a noticed deposition date is not only contrary to the understanding reached by the parties in attempting to resolve this issue without motion practice, but would also unreasonably reward Defendants for the hostility of their witness and encourage Lisa's game of "catch me if you can" with Plaintiff's process server. On the other hand, Defendants are not prejudiced by producing the discovery that Plaintiff initially noticed and has continuously attempted to take, as discussed with Defendants on multiple occasions throughout the discovery period.

9

Defendants' position:

Plaintiff issued a document subpoena to Tom Lisa on or about March 26, 2018, with documents returnable by April 27, 2018. Pl. App. 091-094 (Dkt.#40-8;40-9). Document production from Tom Lisa was not resolved in April, and in early May, Plaintiff's counsel announced her intention to depose Mr. Lisa, requesting that Defendants' counsel consult with Mr. Lisa on dates. On May 7th, Defendants' counsel informed Plaintiff's counsel of his availability for Richard Azar's deposition, and closed with "As for Tom Lisa, I have no control over him and would prefer a date that does not require traveling on a Monday or Friday in June." Defendants Exhibit U; App 082 (Dkt. 40-7). The parties counsel had no further exchange setting a time for Mr. Lisa's deposition, and Plaintiff did not move to compel production of documents from Mr. Lisa or extending discovery to obtain a ruling on a motion to compel. On May 25, 2018, Plaintiff's counsel sent out a deposition notice to Tom Lisa by e-mail, scheduling Lisa's deposition for June 27, 2018 in New York, enclosing a copy of the March 26, 2018 documents subpoena as an attachment. Defendants Exhibit W, App. 094-097 (Dkt. #40-8; 40-9) Plaintiff's counsel did not consult with Defendants' counsel regarding the date nor did she request that the discovery deadline be extended to take Lisa's deposition.  Notably, the Lisa deposition document subpoena a request for documents that did not include any request for documents evidencing sale of Camber stock that Lisa had received, documents evidencing any satisfaction of Defendants' debt to Lacey by sale of Camber stock, or any documents evidencing the status of Defendants' debt to Lacey. Def. App 097 (Dkt. #40-9).  Plaintiff has not explained why a timely motion to compel production from Mr. Lisa was not filed nor has Plaintiff offered any credible evidence as to why the May 25, 2018 deposition notice set the time for the deposition for 12 days after discovery closed without any discussion of counsel regarding extending discovery or taking the deposition at that time.

Dated: June 29, 2018

Respectfully submitted,

| | |
|---|---|
| *s/ Miriam Tauber* | *s/ William L. Sessions* |
| ———————————— | ———————————— |
| Miriam Tauber | William L. Sessions |
| W.D Tex. Bar ID: 4462537 | Texas Bar No. 18041500 |
| Miriam Tauber Law PLLC | SESSIONS & ASSOCIATES, PLLC |
| 885 Park Ave. 2A, New York, NY 10075 | 14951 North Dallas Parkway, Suite 400 |
| Phone: (323) 790-4881 | Dallas, Texas 75254 |
| Email: MiriamTauberLaw@gmail.com | Telephone: (214) 445-4055 |
| | Facsimile: (214) 723-5346 |
| | E-mail: lsessions@sessionslaw.net |
| David Lopez, Esq. | |
| (admitted *pro hac vice*) | |
| 171 Edge of Woods Road, PO Box 323 | |
| Southampton, NY 11968 | |
| Phone: (631) 287-5520 | |
| Email: DavidLopezEsq@aol.com | |
| *Attorneys for Plaintiff Aaron Rubenstein* | *Attorney for Defendants Richard N. Azar, II, RAD2 Management, LLC, RAD2 Minerals, Ltd., and Segundo Resources, LLC* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 29, 2018, I filed the foregoing JOINT ADVISORY REPORT OF CONFERENCE ON PLAINTIFF'S MOTIONS TO COMPEL DEPOSITIONS; EXTEND DISCOVERY & DISPOSITIVE MOTION DEADLINES on the Court's ECF system, which will notify counsel for all parties of the filing by email.

            *s/ Miriam Tauber*

            Miriam Tauber