UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| AARON RUBENSTEIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5-17-CV-962-FB |
| ) | |
| RICHARD N. AZAR, II, RAD2 ) | |
| MANAGEMENT, LLC, RAD2 MINERALS, ) | Jury Trial Demanded |
| LTD., and SEGUNDO RESOURCES, LLC, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| CAMBER ENERGY, INC. ) | |
| (f/k/a LUCAS ENERGY, INC.) ) | |
| ) | |
| Nominal Defendant. ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Richard N. Azar, II ("Azar"), RAD2 Management, LLC ("RAD2 Management"), RAD2 Minerals, Ltd. ("RAD2 Minerals"), and Segundo Resources, LLC ("Segundo") (collectively, "Defendants") file this Motion for Summary Judgment against Plaintiff Aaron Rubenstein ("Plaintiff" or "Rubenstein") pursuant to Federal Rule of Civil Procedure 56.

### I. BACKGROUND

For more than 40 years, Richard N. Azar, II ("Azar") has successfully explored for oil and gas in Texas and Oklahoma. Oil and gas prospecting is expensive and risky. To finance his operations, Azar has assembled a small coterie of sophisticated investors, financiers, and business colleagues who understand the oil and gas business and deal with one another primarily on the strength of the investment and mutual trust that the other person's word is their bond.

Between November 2014 and August 2015, Azar, his affiliated entities, and business colleagues borrowed millions of dollars from private investor Kenneth Lacey ("Lacey") to finance various oil and gas projects. Appendix A-1, p.2 (App 007) The transactions were orchestrated by Thomas Lisa ("Lisa"), an investment advisor who has served as Lacey's investment advisor and agent for 17 years. Azar's dealings with Lacey were consistently handled by Lisa as the go-between. Appendix B, Deposition of Thomas Lisa, 7:6-8; 8:3-8; 10:8-11; 34:3-5, 20-23; 54:24-55:13; 56:5-23 (App 036; 037; 043; 048)

In early January 2016, five promissory notes from Azar-affiliated entities to Lacey were consolidated into an $8.8 Million unsecured promissory note (the "Lacey Note"). TexOak Petro, LLC ("TexOak") was the maker. There was no guarantor. *See* Appendix A-1. At the time, Azar, Lisa and Lacey expected that the oil and gas projects to which Lacey had made loans which formed the basis for the consolidated Lacey note would be sold to a publicly-traded entity, Camber Energy, Inc., formerly Lucas Energy, Inc. ("Camber" or "the Company") under the terms of a December 30, 2015 Asset Purchase Agreement (the "Camber APA"). From that sale, Azar, his investors and affiliates were to receive Camber stock, including Camber Series B Convertible Preferred stock ("Series B Preferred Stock") that was to have an initial stock price of $25.00 per share. Declaration of Richard N. Azar, II, ¶ 6, Appendix A. (App 003) The Lacey Note provided that the borrower could make payment in cash or in kind with Camber common stock or Camber Series B Convertible Preferred stock ("Series B Preferred Stock"). The Lacey Note also provided that the borrower could, at its option, put up 352,000 shares of Series B Preferred Stock as security for the note. The parties based the number of shares upon an anticipated Original Issue Price of $25.00 for the Series B Preferred Stock. *Id.* at ¶ 7, App 004.

On May 2, 2016, the Company filed a Registration Statement in which it described the characteristics of its capital stock. Appendix C, *Lucas Energy, Inc. Form S-1 Registration Statement*. Series B Preferred Stock was convertible to common stock by dividing its stated Original Issue Price of $25.00 by a $3.50 Conversion Price. Appendix C-1, p. 43 (App. 155)

On June 18, 2016, the Company filed a Proxy Statement in which it stated that Series B Preferred Stock was not registered and not salable. Appendix C-2, *Schedule 14A Information – Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (Amendment No. 2)*, p. 52 (App 242) (the "Proxy Statement"). The Proxy Statement provided that Series B Preferred Stock was required to bear the following restrictive legend:

> "*The securities represented by this certificate have not been registered under the Securities Act of 1933 or any state securities act. The securities have been acquired for investment and may not be sold, transferred, pledged or hypothecated unless (i) they shall have been registered under the Securities Act of 1933 and any applicable state securities act, or (ii) the corporation shall have been furnished with an opinion of counsel, satisfactory to counsel for the corporation, that registration is not required under any such acts.*"

Appendix C-3, Proxy Statement, *Exhibit D, Amended and Restated Certificate of Designation of Lucas Energy, Inc. Establishing Designations, Preferences, Limitations and Relative Rights of Its Series B Redeemable Convertible Preferred Stoc*k, p. 4 (App. 318)

After close of the Camber APA transaction in the summer of 2016, Azar, his investors, and their affiliates held a majority interest in Camber. Azar and other investors became Camber directors. As part of the transaction, Azar-affiliate Segundo received 352,000 shares of Series B Preferred Stock. Appendix A, Declaration of Richard N. Azar, II, ¶9. (App. 004)

In months subsequent to the Camber APA closing, Azar and Lisa discussed Azar's delivery of Camber Class B Preferred Stock as security for the Lacey Note. Azar informed Lisa that Segundo had received 352,000 shares of Series B Preferred Stock and would put up 250,000

of those shares as security. Lisa proposed that Azar to deliver the stock to Bleu Willow, Inc. ("Bleu Willow"), a company owned by Lisa, to be held as collateral for the Lacey Note. *Id.* at ¶10. (App 004.)  On or about October 31, 2016, Lisa delivered a document entitled "Term Sheet" in which Bleu Willow was named as the "successor" to TexOak Energy, LLC and payment of 250,000 shares of "Lucas/Camber Energy Preferred Convertible B Class (sic)" was to serve as payment for the note. A facsimile of the note is depicted below:

### TexOak Energy LLC.

**TERM SHEET**

LENDER: KEN LACEY ("LACEY")

BORROWER:   Bleu Willow Inc.as the successor to TexOak Energy, LLC.
            A Texas Limited Liability Co.

Note
Payment:    250,000 Shares Lucas/Camber Energy Preferred
            Convertible B. Class

Note:       8.8 million dated January 2016, due March 31, 2017

Guarantor:  Richard N. Azar II. guarantees only the negative difference if any , between the proceeds
            from sale of shares by Bleu Willow, Inc. and face amount of note and any accrued
            interests.

Dated:      October 31, 2016

TexOak Energy, LLC
Richard N. Azar II.

*[signature]*

Richard N. Azar II.
President

Ken Lacey

*[signature]*

Thomas Lisa
Bleu Willow Inc.

*See,* Appendix A-2. (App 013) This convoluted document never became operative.[1]

On or about November 2, 2016, Azar delivered 250,000 Series B Preferred Stock from Segundo to Bleu Willow, Inc. ("Bleu Willow") as collateral for the Lacey Note. The Request to Transfer Stock / Stock Power Form delivered to the transfer agent reported the purpose of the transfer as "Payment for Investment Transaction" and the cost basis as "$25.00 per share. Appendix A-3 (App 015) Two months after delivery of the Camber Series B Preferred Stock to Bleu Willow, Lisa informed Azar that he realized Camber's Series B Preferred Stock was not saleable could not be converted. Lisa told Azar that Lacey wanted Common Stock as security for the loan because it could be sold. Azar agreed to substitute Camber Common Stock for Camber Series B Preferred Stock as security for the Lacey Note.  Appendix ___, Declaration of Richard N. Azar, II, at ¶13. (App 004) On January 3, 2017, Azar exchanged 760,000 shares of Camber Common Shares for 106,508 shares of Camber Series B Preferred Stock from Bleu Willow. *Id.*, ¶14. (App 005).

On September 28, 2018, Plaintiff Rubenstein filed this lawsuit, seeking recovery of "short-swing profits under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78p(b) (the "Act") from Azar, RAD2 Management, RAD2 Minerals, and Segundo. Plaintiff has alleged that Defendants were (i) 10% beneficial owners of Camber Energy, Inc. ("Camber"), who (ii) transferred or sold shares of Camber Series B Preferred Stock in satisfaction of an $8.8 million debt owed by Defendants to non-party Kenneth L. Lacey; and then (iii) re-purchased some of the Camber Series B Preferred Stock shares, less than six months later, in exchange for

---

[1]  In his deposition, Lisa testified that the Term Sheet was prepared by him to show that Bleu Willow would hold the collateral for Lacey; that it was poorly drafted; was not signed by Kenneth Lacey; never became an operative agreement of any kind, and that the original Lacey Note contained all of the agreements regarding borrowing from Lacey. Appendix B, Deposition of Thomas Lisa, 70:9 – 71:2; 72:14 – 20;78:10 – 80:11; 81:3–7; 128:9 – 129:9. (App 052; 054; 066)

shares of Camber common stock transferred by Defendants as payment for the returned and re-purchased Camber Series B Preferred Stock shares.

## II. UNDISPUTED MATERIAL FACTS

1. Camber's Series B Preferred Stock had an Original Issue Price of $25.00 and was convertible to common stock by dividing its stated Original Issue Price of $25.00 by a $3.50 Conversion Price.

2. At all times relevant to the transactions in question, Camber's Series B Preferred Stock was not registered and not salable.

3. Series B Preferred Stock was required to bear the following restrictive legend:

*"The securities represented by this certificate have not been registered under the Securities Act of 1933 or any state securities act. The securities have been acquired for investment and may not be sold, transferred, pledged or hypothecated unless (i) they shall have been registered under the Securities Act of 1933 and any applicable state securities act, or (ii) the corporation shall have been furnished with an opinion of counsel, satisfactory to counsel for the corporation, that registration is not required under any such acts."*

4. TexOak Petro, LLC ("TexOak") executed an $8.8 Million note to Kenneth Lacey ("Lacey"), effective December 31, 2015.

5. On or about November 2, 2016, Segundo conveyed 250,000 shares of Camber Restricted Class B stock to Bleu Willow.

6. Thomas Lisa owns Bleu Willow.

7. Thomas Lisa is the agent of Lacey.

8. On January 3, 2017, Bleu Willow transferred to 106,508 shares of Camber Series B Preferred Stock to Azar at a stated value of $25.00 per share.

9. On January 3, 2017, Azar transferred 760,997 shares of Camber Common stock to Bleu Willow at a stated value of $3.50 per share.

10. Bleu Willow has not sold any of the Series B Preferred Stock in its possession.

11. Lacey has not released or forgiven TexOak from the terms of $8.8 Million Lacey Note and the $8.8 Million, plus interest, due under the Lacey Note.

12. Lacey has not declared TexOak in default for the $8.8 Million Lacey Note.

13. TexOak still owes $8.8 Million, plus accrued interest, on the Lacey Note.

### III.
### ARGUMENT AND AUTHORITIES

**A.     Summary Judgment Standard.**

A motion for summary judgment should be granted if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). In the context of summary judgment, evidence must be viewed in the light most favorable to the non-moving party. *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "Conclusory allegations are insufficient to defeat a motion for summary judgment without probative evidence to support the claim." *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*, 541 F. App'x 443, 447 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

**B.     Section 16(b) Elements.**

Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), provides in pertinent part:

> For the purposes of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, . . . shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.

For liability to attach under Section 16(b), a plaintiff must establish: a) the defendant's status as an insider for purposes of the Act; b) the defendant engaged in one or more pairs of non-exempt purchase and sale transactions within a six-month period; c) the defendant profited from the transactions; and d) the defendant retained the profit. *Donoghue v. Murdock*, No. 13-Civ-1224 (PAE), 2013 WL4007565, at *4 (S.D.N.Y., August 6, 2013), citing *Gwordzinsky v. Zell/Chilmark Fund, L.P*, 156 F.3d 305, 308 (2nd Cir. 1998); *Lewis v. Riklis*, 446 F. Supp. 582, 584 (S.D.N.Y.) aff'd, 575 F.2d 416 (2d Cir. 1978); and *Rubenstein v. Very Hungry, LLC*, No. 14-CV-00888-CMA-CBS, 2015 WL 1509761, at *2 (D. Colo. Mar. 30, 2015).[2]

**C.    Plaintiff's Claims Against RAD2 Management and RAD2 Minerals Fail As A Matter of Law.**

There is no evidence that RAD2 Management and RAD2 Minerals were insiders, engaged in engaged in any pairs of non-exempt purchase and sale transactions within a six-month period, profited from the transactions, and retained the profit.

Plaintiff's Complaint alleges the following:

---

[2] A Westlaw search of Deborah Donoghue's name results in listing of at least 21 different lawsuits where Ms. Donoghue was the named plaintiff in a Section 16(b) case over an 18-year period. Plaintiff's counsel, Mr. Lopez represented Ms. Donoghue in at least 16 of those cases. A Westlaw search of Aaron Rubenstein reports more than 8 different lawsuits where Mr. Rubenstein was the named plaintiff in a Section 16(b). Plaintiff's counsel, Mr. Lopez represented Mr. Rubenstein in each of those cases. Commentators have observed that Section 16 suits are "most often" initiated by plaintiffs' attorneys whose incentive is attorneys' fees. Ronald S. Poelman, *New SEC Short-Swing Profit Rules-Heightened Scrutiny of Insiders*, 4-May Utah B.J. 13, at *13 (1991).

12.  On or about November 4, 2016 Azar, individually and/or by and through the affiliated RAD2 and Segundo Defendants, sold 294,000 shares of the Company's Series B Preferred Stock in exchange and in consideration for the elimination of an outstanding debt in the amount of $8,800,000 owed by Azar to an unaffiliated third party.

14.  Azar's disposition and transfer of the Series B Preferred Stock to the third-party lender in satisfaction of the outstanding debt owed by Azar to the lender, as described in Paragraph 12 above, constituted a Section 16(b) "sale" by Azar and one or more of the RAD2 and Segundo Defendants, at an effective sale price of $29.93 per share of Series B Preferred Stock. ($8,800,000 of extinguished debt ÷ 294,000 Series B shares transferred = $29.93/share.)

15.  On or about January 5, 2017, Azar, individually and/or by and through the affiliated RAD2 and Segundo Defendants, agreed with the third-party lender that Azar (and/or his affiliates) would accept the lender's return of 106,508 of the 294,000 Series B shares previously transferred and sold to the lender in satisfaction of the debt owed by Azar, as described in Paragraphs 12-13, above. Azar further agreed to transfer to the lender a total of 760,997 shares of Camber common stock in exchange and substitution for the 106,508 Series B shares returned by the lender and transferred to and received by Defendants.

16.  The lender's return of 106,508 Series B shares to Azar and/or his affiliated Defendants, as described in Paragraph 14 above, constituted a Section 16(b) "purchase" of the 106,508 Series B shares by Azar and/or one or more of his RAD2 and Segundo Defendant affiliates.

There is no evidence that RAD2 Management or RAD2 Minerals: a) was a party to the Lacey Note, borrowed any money from Lacey or contributed any stock to Azar or any other Azar-controlled entity to pay off the Lacey Note; b) contributed any shares that were transferred to Lisa, Lacey or any entity controlled by either of them; c) was a party to any stock transactions in which shares of stock were sold to any party as alleged by Plaintiff; d) profited from the transactions alleged by Plaintiff; and e) retained the profit from the transactions. Plaintiff's allegations are conclusory and speculative. Plaintiff has no probative evidence to support his claim. *See, Vinewood Capital, LLC, supra*. *See also*, *Rubenstein v. Live Nation Entertainment*, No. 16 Civ 7283, Fed. SEC. L. Rep. (CCH) ¶99,744 (S.D.N.Y., June 20, 2017), citing *Olagues v. Icahn*, No. 1:15-CV-0988-GH, 2016 WL 1178877 at *11 (S.D.N.Y, March 23, 2016)(aff'd at

866 F.3d 70 (2nd Cir. 2017)) ("Courts have cautioned against recasting an actual transaction into something a plaintiff hypothesizes it could have been in order to create liability under Section 16(b).") Plaintiff's allegation have no factual foundation, and RAD 2 Management and RAD 2 Minerals are entitled to a summary judgment and dismissal of Plaintiff's claims with prejudice.

**D.   Plaintiff Cannot Prove Defendants Engaged In Non-Exampt Purchase and Sale Transactions Within a Six-Month Period.**

   *1. 294,000 Shares of Camber Series B Preferred Stock Were Not Sold for $8.8 Million.*

Plaintiff has claimed that the Defendants sold 294,000 shares of the Company's Series B Preferred Stock in exchange and in consideration for the elimination of an outstanding debt in the amount of $8,800,000 owed by Azar. This allegation is factually incorrect and contrary to the established facts. Lisa testified that any payment of the note with Camber stock required that the shares of stock be marketable, that the Camber Series B Preferred Stock shares were not marketable; and that he had never done a deal for Lacey where shares purchased or sold were not freely tradeable. Appendix B, Deposition of Thomas Lisa, 44:15–18; 25–45:7; 45:13–16; 46:24 – 47:18; 48:10 –15. (App 045; 046)

Lisa further testified that the "Term Sheet" was intended to be an agreement that Bleu Willow would hold the 250,000 shares of Camber Series B Preferred stock from Azar as collateral for the Lacey Note, but is was poorly written, never signed by Lacey, and never become an operative agreement. *See* FN 1, above; *Id,* 75:10 –19; 76:14–17,19–23; 99:20 – 100:13. (App 053; 059) Lisa stated there was no written security agreement ever executed in connection with the Lacey Note, and that one was not needed because the relationship between him, Azar and Lacey was a close relationship of trust and the majority of business was done on a handshake. *Id.,* 54:24 – 55:13; 59:6 –9; 60:7–20. (App 048; 049) Lisa stated per his agreements

with Azar and Lacy regarding holding 250,000 shares of Camber Series B Preferred Stock as collateral were not written, but oral, and that Lacey was comfortable with this arrangement. *Id.,* 77:1–14, 18 – 78:9. (App 053; 054) Lisa explained that Bleu Willow's obligation was to hold onto the stock until full repayment of the Lacey note or instructions from Lacey or Azar regarding disposition of the stock, but that he would return the stock when the debt was paid. *Id.,* 82:12–83:9; 84:11;18–20; 120:21–24; 121:4–122:10. (App 055; 064) Lisa made it clear that at no time did he make any effort to determine whether the Camber Series B Preferred Stock could be converted to Common Stock and that he has never attempted to convert or sell the stock. *Id.*, 98:5–20; 120:21–24; 121:4–23; 122:3–5; 129:10–16; 130:10–13. (App 059; 064; 066; 067)

The evidence is clear and incontrovertible that the parties did not intend for the transfer of the non-salable, restricted 250,000 Series B Preferred Stock to be a sale, but instead for it to be a delivery to an escrow agent – Lisa – who what to hold the shares as collateral and security for the loan. There is no evidence that the Series B Preferred Stock delivered to Bleu Willow was sold; only that it was substituted for Common Stock on the same valuation basis as the conversion rate for converting Series B Preferred Stock to Common Stock. There is no evidence that any stock received by Bleu Willow for Lacey or any Series B Preferred Stock returned to Azar was sold within six months of either the November 2016 or January 2017 dates.

In *Donoghue v. Murdock*, 2013 U.S. Dist. LEXIS 110605, at *34 n.8 (S.D.N.Y. Aug. 16, 2013), the court noted that a pledge of securities is ordinarily a "non-event" for section 16(b) purposes. A section 16(b) "sale" does not occur until there is a a default allowing foreclosure and disposition of the securities. *See Alloys Unlimited, Inc. v. Gilbert*, 319 F. Supp. 617, 619 (S.D.N.Y. 1970); *see also Harrison v. Orleans*, 755 F. Supp. 592, 594 (S.D.N.Y. 1991). In this context, *Murdock* and *Harrison* are significant for two other reasons. They were decided by

perhaps the most important federal trial court in the country with respect to Exchange Act cases. And they were decided after *Rubin* and *Weaver*. These cases are also consistent with the notion a sale occurs when the owner is irrevocably committed to the transfer of securities so that rights and obligations have become fixed. *See Colan v. Mesa Petroleum Co.*, 941 F.2d 933, 941 (9th Cir. 1991). In the case of a pledge, until a default occurs, the pledgor may receive a return of the securities.

### 2. Substitution of 106,508 Series B Preferred Shares for 760,997 Common Shares was not a "purchase" under 16b.

The exchange of Camber Series B Preferred Stock for Camber Common Stock in January of 2017 was made because Lacey wanted to have some Common Stock and some Series B Preferred Stock as collateral, wanted to substitute the preferred shares for common shares, and requested the exchange. *Id.*, 111:3–21;113:11–24; 131:14–19. (App 062; 057)

The exchange was not at the initiation of Azar nor subject to his control. The terms were entirely dictated by Lacey through Lisa. This is not the circumstance or the type of transaction contemplated by 16(b). The test is whether the transaction was sufficiently within Azar's control to "possibly permit an insider (Azar) to use inside information unfairly." *Alloys Unlimited, Inc. v. Gilbert*, 319 F. Supp. 617, 619 (S.D.N.Y.1970), citing *Blau v. Lamb*, 363 F.2d 507 (2nd Cir. 1966), cert. denied 385 U.S. 1002, 87 S. Ct. 707, 17 L. Ed. 2d 542 (1967). Applying this test, it was Lacey who decided in January of 2017 to request the exchange of non- marketable, non-saleable stock (Series B Preferred Stock) for Common Stock and the valuation of the exchange on an agreed upon cost basis that equaled or exceeded the 7.14285714 exchange ratio for which Series B Preferred Stock could have been exchanged if it were registered and convertible. This is not a circumstance where there was a "(re)purchase of stock" and there was no opportunity for Azar to profit from the exchange based upon use or reliance upon any insider information.

E.   **Defendants Did Not Profit From the Exchange of Shares.**

Rubenstein must offer credible proof that each of the Defendants profited from the transactions and retained that profit. 15 U.S.C. § 78p(b); *Donoghue, supra; Gwordzinsky, supra.* Plaintiff has hypothesized that all of the Defendants profited from the transactions but has failed to allege and establish facts supporting his conclusory claims.

   1. *294,000 Shares of Camber Series B Preferred Stock Were Not Sold In Exchange for Extinguishment of an $8.8 Million Debt.*

Plaintiff alleges that on or about November 4, 2016, Defendants sold 294,000 shares of the Company's Series B Preferred Stock in exchange and in consideration for the elimination of an outstanding debt in the amount of $8,800,000 owed by Azar to an unaffiliated third party. Plaintiff's Original Petition, ¶¶ 12, 13, pp. 3-4 (Dkt. #1). The actual number of Series B Preferred Stock shares transferred by Segundo, an Azar-affiliated entity, was 250,000. Appendix A-3 (App 015), Appendix A, Declaration of Richard N. Azar, II, ¶15. (App. 005); Appendix B, Deposition of Thomas Lisa, 69:14–70:2. (App 051, 052) Nor was the $8.8 Million debt to Lacey extinguished or paid in any way with the 250,000 Series B Preferred Stock shares. First, the Series B Preferred shares were restricted and not marketable. Appendix C-2, *Proxy Statement)*, p. 52 (App 242); Appendix C-3, Proxy Statement, *Exhibit D,* p. 4 (App. 0318) The Lacey Note and Lacey required what the shares of stock provided as payment had to be marketable, and the Series B Preferred Stock shares could not be sold. Appendix B, Deposition of Thomas Lisa, 44:15–18; 25–45:7; 45:13–16; 46:24 – 47:18; 48:10–15; 49:24 –50:20; 98:5–20. (app 045–047; 059) Lisa and Lacey made no attempt to convert or sell the stock. *Id.*, 98:17–20; 120:21–24; 121:4–23; 122:3–5; 129:10–16; 130:10–13. (App 059; 064–067)

Most importantly, none of the $8.8 Million debt or interest on the debt was forgiven or excused. The $8.8 Million debt is still owed. *Id.*, 101:7–24; 102:8–15; 129:10–130:5; 130:23–131:13. (App 059; 060; 066; 067)

### 2. *Defendants did not profit from the exchange of Camber Series B Preferred Shares for Camber Common Shares in January of 2017.*

There is no evidence that any of the Defendants actually profited from the exchange of Series B Preferred Shares for Camber Common Shares. First, there is no evidence that RAD2 Management, RAD Minerals, or Segundo participated in, received any stock from, or received any proceeds from the purchase or sale of any stocks involved in the January 3, 2017 transactions. The transaction was not the result of a trade conducted in the stock market but from a private transaction. Lacey, through Lisa, sought a substitution of collateral and determined the amount of shares of each stock that were to be exchanged. Computed at the agreed exchange prices, which were the same as the Series B Preferred Stock shares' Original Issue Price of $25.00 and $3.50 Conversion Price for Common Shares, Azar transferred to Bleu Willow Common Shares exceeding the value for comparable Series B Preferred Shares. (106,508 Series B Preferred Stock Shares @ $25/share = $2,662,700) (760,997 Common Shares @ $3.50/share = $2,553,489.50). By this calculation, Azar gave more to Bleu Willow and Lacey in the transaction than he received. Moreover, there was no debt extinguished as a result of the transaction. *Id., supra.* In sum, the November 2016 transaction and January 2017 transaction did not produce a profit for any of the Defendants.

### F. Plaintiff's Claims Are Barred By A July 2018 Settlement Agreement Between Segundo And Camber, and Should Be Dismissed With Prejudice.

All of the defendants are entitled to dismissal with prejudice of this lawsuit as the result of a Compromise Settlement Agreement and Mutual Release ("Settlement Agreement") entered

into by and between Camber Energy, Inc. and Segundo in July of 2018. A true and correct copy of the Settlement Agreement, Appendix Exhibit A-4, is attached and incorporated for all purposes.

Paragraph 4 of the Settlement Agreement (App 024) states:

Full Release and Discharge of Segundo. As further and additional consideration for the execution of this Agreement, Camber, for itself, its directors, employees, managers, members, officers, principals, shareholders, lawful representatives, authorized agents, attorneys, successors, and assigns, does hereby release, acquit and forever discharge Segundo and the Other Sellers, and their principals, managers, members, officers, authorized agents, employees, directors, officers, subsidiaries, attorneys and lawful representatives of and from any and all actions, awards, causes of action, claims, controversies, demands, judgments, liabilities, or other obligations arising out of or related to the performance of any and all transactions and agreement contained in, arising from, and related to the APA, whether directly or indirectly, and all other claims, known or unknown, that were existing or otherwise could have been asserted on or before the Effective Date by Camber against Segundo, the Other Sellers, and their principals, managers, members, officers, authorized agents, employees, directors, officers, subsidiaries, attorneys and lawful representatives.

Exhibit 1 of the Settlement Agreement includes the following "Other Sellers": RAD 2 Minerals, Ltd. and Segundo Resources, LLC. (App 032) Richard N. Azar, III is the sole member of Segundo. RAD2 Management, LLC is the general partner of RAD2 Minerals, Ltd. Paragraph 4 releases and discharges all claims of Camber, including those of its shareholders, against Segundo and Other Sellers, their principals, managers, members, officers, authorized agents, employees, directors, officers, subsidiaries, attorneys and lawful representatives for "all other claims, known or unknown, that were existing or otherwise could have been asserted on or before the Effective Date by Camber against Segundo, the Other Sellers, and their principals, managers, members, officers, authorized agents, employees, directors, officers, subsidiaries, attorneys and lawful representatives." It is undisputed that the claims in the instant lawsuit arose long before July of 2018.

In *Donoghue v. Bohemian Investments*, 15-cv-01279-PAB-KLM, 2016 WL 9738103 (D. Colo. September 30, 2016), the plaintiff brought 16b claims. The defendants sought dismissal of the lawsuit on the basis that the nominal defendant company had settled the claims. The court dismissed the case, holding that courts "have held that Section 29(a) does not prohibit parties from executing valid releases in connection with securities fraud claims that have already matured." 206 WL 9738103 at *7. The Court cited *Dresner v. Utility.com, Inc.*, 371 F. Supp.2d 476, 490 (S.D.N.Y. 2005) and *Korn v. Franchard Corp.*, 388 F. Supp. 1326, 1328 (S.D.N.Y. 1975). The Court noted that the Plaintiff conceded that, while "a company cannot generally 'waive' the Section 16(b) prohibition on short swing trading or 'release' its insiders from compliance with the rule, the company may 'settle' a particular Section 16(b) claim against its insiders when liability is genuinely disputes and uncertain." 206 WL 9738103 at *7. *See also*, Wolf v. Barkes, 348 F.2d. 994 (2th Cir. 1965), dismissing a shareholder derivative suit settled by the nominal defendant company.

Defendants ask that the Court honor the settlement made at arm's length with Camber and dismiss this lawsuit with prejudice.

## PRAYER

FOR THE REASONS STATED ABOVE, Defendants pray that upon consideration of Defendants' motion, Court will grant this motion for judgment by ruling that each of the Defendants has not violated 15 U.S.C. § 78p(b) as a matter of law; that none of the Defendants profited from the stock transactions in question, that Defendants are entitled to dismissal with prejudice of all claims against them because such claims were settled; and that the Court grant to Defendants such other and further relief, both legal and equitable, to which they may be justly entitled.

Respectfully submitted,

/s/ William L. Sessions
William L. Sessions
Texas Bar No. 18041500
SESSIONS & ASSOCIATES, PLLC
14951 North Dallas Parkway-Suite 400
Dallas, Texas 75254
General Telephone: (214) 445-4055
Direct Telephone: (214) 217-8855
Facsimile: (214) 723-5346
E-mail: lsessions@sessionslaw.net

**COUNSEL FOR DEFENDANTS**
**RICHARD N. AZAR, II, RAD2 MANAGEMENT,**
**LLC, RAD2 MINERALS, LTD., AND**
**SECUNDO RESOURCES, LLC**

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was electronically filed with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

      miriamtauberlaw@gmail.com
      Miriam Tauber
      Miriam Tauber Law, PLLC
      885 Park Avenue-Suite 2A
      New York, New York 10075

      davidlopezesq@aol.com
      David Lopez
      Law Offices of David Lopez
      P.O. Box 323
      171 Edge of Woods Road
      Southampton, New York 11968

      timjhenderson@msn.com
      Timothy J. Henderson
      6400 West Loop South-Suite 280
      Bellaire, Texas 77401-2905


   09/04/18                                                    /s/William L. Sessions
Date                                                              William L. Sessions