## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

AARON RUBENSTEIN,

    **Plaintiff,**

    v.

RICHARD N. AZAR, II, RAD2
MANAGEMENT, LLC, RAD 2 MINERALS,
LTD. And SEGUNGO RESOURCES, LLC.

    **Defendants,**

CAMBER ENERGY, INC.
(F/K/A LUCAS ENERGY, INC.)

    **Nominal Defendant**.

**Civil Action # 5-17-CV-962-FB**

**Jury Trial Demanded**

---

### PLAINTIFFS' OPPOSITION TO DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

---

### OVERVIEW

    This is a Motion For Summary Judgment brought by the defense 52 days past the Scheduling Order bar date for all dispositive motions of July 13, 2018. Plaintiff's counsel offered the defense, in writing, to try to address in a common-sense fashion the motion's untimeliness prior to its bringing. The defendants have chosen simply to plow on. The motion is not properly before the Court, willfully and brazenly so.

    Should the Court choose, *sua sponte,* to amend the Scheduling Order nearly two months after the close of its motion deadline, Plaintiff, without waiver including waiver under

Rule 11, F.R.C.P., addresses the motion substantively.  In the guise of a motion for summary judgment what is before the court is a request for plenary trial on papers and fanciful facts.

This is a shareholder suit brought under Section 16(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78p(b), (the "ACT") to recover "short swing" profits realized by Defendants, who are beneficial owners of more than 10% of a class of equity security of Nominal Defendant, Camber Energy, Inc. ("CAMBER") and in the case of Richard N. Azar ("AZAR"),  an officer, interim CEO, and chairman of the board. These "insiders" are alleged to have purchased and sold shares of CAMBER within periods of less than six months realizing profits therefrom.

The complaint alleges that AZAR, directly or through entities that accorded him beneficial ownership of their holdings by reason of his ownership and control of them "sold", as that term is defined for purposes of the ACT, on or about November 4, 2016, 294,000 shares of CAMBER Series B Preferred Stock in exchange for the elimination of outstanding debt of $8,800,000 under a note in writing (Dft's. Exhibit A-1). The "Term Sheet" appearing at page 4 of Defendant's Motion and Brief For Summary Judgment ("DEFENDANTS' BRIEF") and at Dft's Exhibit A-2, signed by AZAR as the party to be charged, evidences this transaction with variations of the date to October 31, 2016, and the number of shares to 250,000.  Neither the five day variance in the date of the transaction described nor the 44,000 share variance in the number of shares involved materially affects the violation of Section 16(b) described.  The number of shares is larger than the number alleged to have been subsequently sold and the date remains one within a period of less than six months of the subsequent purchase.

The complaint further alleges that on or about January 5, 2017, AZAR directly or through the other defendants, accepted 106,508 shares of Series B Preferred from the lender and

transferred to the lender 760,997 shares of CAMBER common stock in payment.  The receipt of the Series B Preferred Stock for value was, Plaintiff contends, their purchase by AZAR for a price measured by the fair market value of the common stock delivered in exchange.  The sale of October, 2016, was at a higher price than the purchase of Janaury, 2017, and a short-swing profit resulted.

**Consent To Dismissal Of Two Defendants And Of One Count**

Plaintiff agrees that discovery has not produced evidence supporting the liability of RAD2 Minerals, Ltd or of RAD2 Management, LLC and consents to their dismissal from the suit with prejudice.

Plaintiff also agrees that COUNT II of the Complaint may be dismissed.  Its purpose has been mooted by case development.

The case continues with the remaining defendants, hereafter "The "DEFENDANTS".

## APPLICABLE LEGAL STANDARDS

### Decisional Standard on a Rule 56 Motion for Summary Judgment of Dismissal

The moving party on a motion for summary judgment to dismiss must demonstrate that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. *Beck v, Texas State Bd. of Dental Exam'rs*, 204 F.2d 629, 633 (5th Cir. 2000). A district court is bound on summary judgment to determine only whether there is a genuine issue of material fact and is not empowered to weigh evidence or determine the truth of matters asserted. *United States v. Shumway*, 199 F. 3d 1093, 1103 (9th Cir. 1999).

## I.   Elements of a Section 16(b) Claim

Section 16 of the Securities Exchange Act, 15 U.S.C. § 78p imposes certain obligations on officers, directors and beneficial owners of more than 10% of a class of equity security registered under Section 12 of the Act relating to their trading in the securities of the issuer. Section 16(a) mandates that such statutory "insiders" must report to the Securities & Exchange Commission (SEC) the amounts of all equity securities beneficially owned and must timely disclose any changes in such ownership. *See* 15 U.S.C. § 78(a); *see also Roth* v. *Goldman Sachs Grp. Inc.*, 873 F. Supp. 2d 524, 529 (S.D.N.Y. 2012). Section 16(b) polices trading of securities by insiders. In relevant part, it provides:

> "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) ... within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such [insider] in entering into such transaction …"

15 U.S.C. § 78p(b).

All that needs to be established for there to be liability under Section 16(b) is:

a) insider status;

b) one or more purchases and sales, or sales and purchases, by an insider, of the issuer's equity securities, registered under Section 12 of the Act, within periods of less than six months;

c) a resulting profit; and

d) retention of that profit by the insider.

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.* ,156 F.3d 305, 308 (2d Cir. 1998).

Section 16(b) serves to "deter insiders who are presumed to possess material information about the issuer, from using such information as a basis for purchasing or selling an issuer's securities at an advantage over persons with whom they trade." *Id*. Section 16(b) "operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and by-passing corrupt insiders who skirt the letter of the prohibition." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320-21 (2d Cir. 1998). All that is necessary to establish liability is evidence of insider status and a profitable short-swing transaction. *Id*. No proof of actual misuse of inside information, *see, e.g., id*.; *Foremost-McKesson, Inc. v. Provident Secs. Co.*, 423 U.S. 232, 251 (1976); *Kern Cty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595 (1973), or bad faith on the insider's part, *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 424 n. 4 (1972); *Gollust v. Mendell*, 501 U.S. 115, 122 (1991), is required. "There is, in effect, a conclusive presumption that the insider traded on the basis of inside information when conducting a short-swing transaction. Therefore, issues of scienter, materiality, reliance and causation ... are irrelevant to the application of Section 16(b)." Peter L. Romeo and Alan L. Dye, *Section 16 Treatise and Reporting Guide,* (4th ed. 2012) ("Romeo & Dye") § 9.01[b] at 826.

## FACTS

The central material facts of the case are stated in the third, fourth and fifth paragraphs of "Overview", *supra*.   Plaintiff, additionally, accepts as accurate Paragraphs 1 through 9 of Defendants' Brief on the motion.   The balance of that statement of  "Uncontested Facts" are not accepted.

The defense has sought to propose alternative versions of the facts thus stated creating thereby genuine issues which preclude a grant of summary judgment for either party. These alternative facts will be explored in greater detail at Point I:  Genuinely Disputed Issues Of Material Fact.

Additional facts have been created by the defense for purposes of this motion and long after the close of discovery and the bar date for dispositive motions.  They, in the form of a purported release of all liability running from CAMBER (of which AZAR is interim CEO) and AZAR and the other defendants, are discussed a Point II:  The Purported Release Does Not Bar Plaintiff's Section 16(b) Claim as a matter of law.

## ARGUMENT

### I.  There Are Genuine Issues Of Material Fact Which Bar Summary Judgment

However many genuine issues of material fact may be extant, and putting aside until the next Point of argument the weight to be accorded the purported release, the evidentiary heart of this case is at Dfts' Exhibits A-1 and A-2.  For purposes of this motion the other roughly 300 pages of Exhibits can safely be set aside awaiting trial and presentation to the jury.

Exhibit A-1 is a note (the "Note") executed by TexOak Petro, LLC, an entity owned by AZAR, to consolidate and be a novation of aggregate debt of $8,800,000 owed by various entities owned by AZAR to the Kenneth Lacey Revocable Trust. Although it contains a

provision whereby the "*borrower, at its sole option"* might elect to pledge as security 352,000 shares of Camber Series B Preferred Stock, no such pledge was ever made and no Security Agreement was ever executed or delivered or registered.  There was a specific disclaimer of other, different or additional security for payment. At the time of execution of the Note the borrower did not own any of the referenced shares.

Any payment of principal or interest could be made, at the borrower's election, in cash or in Common Stock or in the Preferred Series B Convertible Stock of Camber, each valued according to formulas contained in the note.  There was no requirement in the Note that the shares of common stock of Camber used in payment be registered shares and, as the Defendants' Brief at p. 3 acknowledges (with citations to the Appendix), CAM**BER** filed with the Securities & Exchange Commission materials clearly informing the investing public that the Preferred Series B Convertible Stock was not registered and not publicly tradable.

Exhibit A-2 is the Term Sheet dated October 31, 2016, signed by AZAR as a step toward resolution of the indebtedness evidenced by the Note at Exhibit A-1. AZAR agreed to have Bleu Willow, an entity owned by one Thomas Lisa (LISA), acting on behalf of and as agent for the Lacey Trust, assume the Note as successor debtor and accept 250,000 shares of Camber Energy Class B Convertible Preferred stock from AZAR outright as "Note Payment".  Plaintiff contends it was the intention to have LISA liquidate those shares through Bleu Willow and apply proceeds against the Note as market conditions allowed.  AZAR agreed to be personal guarantor of any shortfall between sale proceeds and the face value of the Note and accrued interest.  The words "collateral" or "security agreement" or "escrow" are all absent.

The agreed number of shares were, in fact, transferred to Bleu Willow by AZAR

and entities under his influence and control.  All such transfers were free and clear of any security interest. They became the unencumbered property of Bleu Willow. Regrettably, the market for CAMBER shares swooned and no shares were ever liquidated according to the plan evidenced by the Term Sheet.

These two documents are as clear as the English language can make them and acts taken in fulfillment of them are ratification of their plain meaning.

The defense now contends, through the oral deposition testimonies of AZAR and of  LISA that the plain meaning of these documents is not as the reader would think. At fn. 1 of the Defendants' Brief the argument is summarized:

> "In his deposition testimony, Lisa testified that the Term Sheet was prepared by him to show that Bleu Willow would hold the collateral for Lacey; that it was poorly drafted; was not signed by Kenneth Lacey; never became an operative agreement of any kind, and that the original Lacey Note contained all of the agreements regarding borrowing from Lacey. [Citations to Appendix omitted]."

It is unnecessary to plod through the remainder of the motion as it relates to Plaintiff's substantive claims.  Substitution of oral testimony as to what the written words were intended to convey for the actual text of the controlling written and signed document, the oral testimony directly contradicting the plain meaning of the written words, s is a matter for the jury to decide (should the attempt get past a *motion in limine*).  Included in the jury's consideration must be demeanor evidence of the witnesses under cross-examination as they spin their tales..

On that latter note, LISA testified that he and AZAR "were almost of family" Exhibit B, Lisa Depositon: p. 55, ls 7 & 8.  The jury can weigh whether LISA's extraordinary testimony is in any way colored by family feeling.

AZAR's oral testimony and written submissions on this motion are of a piece with the defense strategy of impugning the documentation.  Shall Your Honor, on papers, adopt a set of facts diametrically opposed to those contained in the controlling documents?  Should Your Honor entertain testimony explaining away the filings of CAMBER with the Securities & Exchange Commission fully consistent with those documents and at odds with the newly hatched alternative facts?  Or are these questions not for a properly instructed jury to decide?

At the other end of the short-swing match is the pleaded purchase of Series B Convertible Preferred shares by AZAR in January of 2017 It is claimed at page 12 of the Defendants' Brief that the transaction was not subject to AZAR's control, Mr. Lacey having requested it as a way if obtaining marketable securities for Bleu Willow.  The most cursory reading of the Note shows that AZAR had the power to make payments in kind at any time.  Marketability was never a term of the Note or of the Term Sheet.  The claim that LISA did not realize the Series B Convertible Preferred was not marketable at the time of entry into the Note speaks poorly for a financial expert who testified to his pedigree. It strains credulity. A change of mind by Mr. Lacey is not such a form of compulsion for Mr. AZAR as to make his compliance any thing other than the decision of a sentient adult to engage in a transaction.  This is, at best a defense that fails as a matter of law and short of best, a matter for a well instructed jury to decide.

The declaration at page 12 of the Defense Brief that "there was no opportunity for AZAR to profit from the exchange based upon use of or reliance upon any inside information is no defense as a matter of law.  As Interim CEO of CAMBER, AZAR and Chairman of its board of director he is conclusively presumed to have had access to inside information and proof of actual misuse is no requirement of the strict liability strictures of the statute.

At page 13 of the Defense Brief it is asserted that the Plaintiff must demonstrate that the Defendants profited from the transactions and retained those profits.  Profits are determined by matching the highest priced sale against the lowest priced purchase.  *Smolowe v. Delendo Corp.,* 136 F 2d. 231 (2d Cir.), *cert. denied*, 320 U.S.751 (1943).  It is an accounting issue for a well instructed jury to decide.

## II.   The Release Between CAMBER, SEGUNDO And Incidentally, Possibly, AZAR Does Not Bar Plaintiff's Section 16(b) Claim

At page 14, Par. F, of Defendants' Brief it is argued that a "…July, 2018, Settlement Agreement Between Segundo and Camber…." (the "SETTLEMENT AGREMENT"), (Dfts' Exhibit A-4) releases the Defendants from liability under Section 16(b).  Plaintiff accepts that the purported SETTLEMENT AGREEMENT is as exhibited but argues that, as a matter of law, it is incapable of extinguishing Plaintiff's claims on CAMBER's behalf.

The SETTLEMENT AGREEMENT relates to an accounting dispute between CAMBER and SEGUNDO about a December 30, 2015, Purchase Agreement between the two.  The subject of the latter was oil and gas properties.  Incident to settlement of that dispute in the ordinary course of business the parties exchanged general releases incorporated in the text of the SETTLEMENT AGREEMENT. The release names SEGUNDO as one of the released parties but does not specifically name AZAR, only his son, Richared N. AZAR, III.  It does name in broad-brush terms the officers, directors, shareholders, employees, etc. of SEGUNDO. The defense does not make clear under which category it claims AZAR to be covered nor whether, in fact, it does.

Defendants contend that those releases preclude Plaintiff (as one of CAMBER'S shareholders) from continuing this Section 16(b) action to recover short swing profits from AZAR and SEGUNDO for the benefit of CAMBER.

10

Defendants have the burden to plead and prove the availability of any purported defense to liability under the statute. *See, e.g.*, *Rosen v. Brookhaven Cap. Mgmt. Co., Ltd.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002) (Section 16(b) plaintiff not obligated to refute anticipated defenses, but may "rebut defendant's proof of affirmative defenses"). The Defendants have not troubled to plead a defense of release and the time for amendment is long past. Defendants cannot meet their burden with respect to the Release, as a matter of law or under the facts of this case.

### A.  The SETTLEMENT AGREEMENT Cannot Function as a Waiver or Release of Section 16(b) Liability

The SETTLEMENT AGREEMENT is the substantial equivalent of a "release" or a "waiver" of claims as construed by the DEFENDANTS, a construction with which Plaintiff disagrees. *See Syverson v. IBM*, 472 F. 3d 1072, 1083-85 (9th Cir. 2006) (concepts "substantially overlap," distinction between them is "amorphous" and "more apparent than real"). The Section 16(b) short swing trading restrictions cannot be "released" or "waived," and the SETTLEMENT AGREEMENT cannot preclude Plaintiff's claim to enforce the statute. It does not warrant dismissal of this action a matter of law.

As the Tenth Circuit observed in *First Golden Bancorporation v. Weiszmann*, 942 F.2d 726, 728-29 (10th Cir. 1991), the strict liability imposed by Section 16(b), and its purpose as a "prophylactic anti-fraud statute," would be eviscerated if its enforcement could be waived or circumvented by companies or insiders. *Weiszmann* is part of a long line of cases in which courts have invalidated agreements that effectively "waive" the operation of the statute. *See id.* (indemnification of Section 16(b) liability would undercut statute's deterrent purpose); *see also Roth v. Solus Altern. Asset Mgmt. LP*, No. 14-cv-9571(WHP), N.Y.L.J. 1202735593118, at *14 (S.D.N.Y. Aug. 20, 2015) (agreement unenforceable if it would "operate as waiver or release of

an issuer's right to recover short-swing profits"). Courts have similarly voided attempts to "release" an insider's transactions from exposure to Section 16(b) under Section 29 of the Act, 15 U.S.C. § 78cc, which prohibits agreements to "waive compliance" with or to "violate" the securities laws. *See, e.g.*, *Volk v. Zlotoff*, 285 F. Supp. 650, 657 (S.D.N.Y. 1968) (corporation could not "protect its insiders from liability" through agreement that purported to "remove [the insider's] transactions from the ambit of Section 16(b)"); *see also Allied Artists Pictures Corp. v. Giroux*, 312 F. Supp. 450, 451 (S.D.N.Y. 1970) (holding that company's "general release" of all claims against insider could not preclude Section 16(b) claim as a matter of law).

By the same token, an insider is not permitted to frustrate the disgorgement required under Section 16(b) by arranging for short swing profits to be replaced with or traded for another benefit. *See, e.g., Weiszmann*, 942 F.2d at 728-29; *see also Tex. Internat'l Airlines v. Nat'l Airlines, Inc.*, 714 F.2d 533, 537-41 (5th Cir. 1983) (Section 16(b) liability cannot be treated as a "cost of doing business," insider's overall investment expenses could not reduce amount of short swing profit); *Suffield Bank v. LaRoche*, 752 F. Supp. 54, 60-61 (D.R.I. 1990) (insider could not offset amount owed on loan by amount of 16(b) liability incurred from sale of stock pledged as collateral); *Brown v. CIR*, 529 F.2d 609, 612 (10th Cir. 1976) (Section 16(b) liability could not be parlayed into a windfall tax benefit for the insider); *see generally* Romeo & Dye § 9.01. The mandatory restrictions of Section 16(b) cannot be negotiated away by the insider or relinquished by the issuer, even in connection with a transaction that benefits the company. *See, e.g.*, *Huppe v. WPCS Internat'l Inc.*, 670 F.3d 214, 218-19 (2d Cir. 2012) (Section 16(b) applied to transactions undertaken by insider at the company's request); *Allied Artists*, 312 F. Supp. at 451; *Volk*, 285 F. Supp. at 655. In that regard, courts have recognized that Section 16(b) is specifically designed to withstand the bargaining power wielded by majority

12

shareholders who "do not necessarily owe fiduciary duties to a corporation." *Huppe*, 670 F.3d at 219-20; *see, e.g.*, *Solus*, N.Y.L.J. 1202735593118, at *14 (agreement that purported to exonerate insider from Section 16(b) liability was "especially" problematic because it "was negotiated as part of the rescue of" the issuer via investment by insider).

The shareholder suit is the sole statutory mechanism for overriding collusion between the company and its insiders to avoid the strict liability policy. 78 U.S.C. § 78(p)(b) (enforcement delegated exclusively to issuer and shareholders); *see, e.g.*, *Volk*, 285 F. Supp. at 655 (noting that the corporation "often is the unwilling instrument in enforcing the statutory policy"); *see generally* Romeo & Dye §§ 1.01[3][b], 9.01[8][a] (SEC has no authority to enforce Section 16(b); the shareholder's right of action is the "safety valve for reluctant issuers"). Shareholders are provided with the unequivocal right to bring a Section 16(b) claim for profits recoverable by an issuer if, for any reason, the "issuer shall fail or refuse to bring such suit." 15 U.S.C. § 78(p)(b). The company's "business judgment" to relinquish a claim for short swing profits – including through an invalid, purported "release" – is necessarily non-binding on its shareholders, who are expressly authorized by the statute to file any claim that the issuer "refuse[s] to bring." *Id*.; *see also Segen v. Comvest Venture Partners, L.P.*, Fed. Sec. L. Rep. (CCH) ¶ 93,271, at 96,349 (D. Del. 2005); *see also Pelligrino v. Nesbitt*, 203 F.2d 463, 467 (9th Cir. 1953) (issuers do not have "the usual discretion" to pursue a Section 16(b) claim, but rather a "duty" to enforce the statute).

The DEFENDANTs' Motion For Summary Judgment of Dismissal asks the Court to contravene the federal securities laws and controlling and consistent precedent by construing the SETTLEMENT AGREEMENT to vitiate Section 16(b) and preclude its enforcement. The SETTLEMENT AGREEMENT cannot include a "waiver" of Section 16(b) liability among the

"consideration" exchanged for a separate transactional benefit (i.e., in connection with the settlement of an accounting dispute), and Plaintiff's claim survives the SETTLEMENT AGREEMENT's incidental releases. As the SETTLEMENT AGREEMENT does not provide an affirmative defense to Plaintiff's Section 16(b) claim as a matter of law, Defendants' Motion For Summary Judgment Of Dismissal should be denied – and Defendants should be precluded from asserting inherently invalid defenses based on the SETTLEMENT AGREEMENT in their proposed Final Pre-Trial Order. *See, e.g.*, *Allied Artists*, 312 F. Supp. at 452 (striking affirmative defenses based on "waiver, release or estoppel, [as] insufficient as a matter of law," and dismissing Defendants' counterclaim for indemnification based "on the same void 'general release' agreement"); *see also Texas Internat'l*, 714 F.2d at 537-41 ("the courts do not entertain equitable defenses which could operate to bar [a Section 16(b)] recovery by [] shareholders"); *see generally* Romeo & Dye § 9.04[3].

**B.   The SETTLEMENT AGREEMENT Is Not an Enforceable Section 16(b) "Settlement"**

Defendants ask the Court to dismiss this action based on the broad principle that courts "favor voluntary agreements to settle disputes" – conveniently neglecting to mention the directly applicable case law establishing that courts distinctly *disfavor* agreements to "waive" or "release" Section 16(b) claims, in particular. *See, e.g.*, *Weiszmann*, 942 F.2d at 729 (waiver of Section 16(b) claims invalid); *see also Solus*, N.Y.L.J. 1202735593118, at *14 (agreement whereby "Solus, an insider, purported to negotiate its way out of Section 16(b) liability" was "inherently suspect," and "unenforceable" if construed as a "waiver" or "release"); *Syverson*, 472 F. 3d at 1083-85 ("covenant not to sue" virtually indistinguishable from "release"). But no term-of-art trickery can transform an unenforceable "waiver" into a binding "settlement." And even if the Court were to evaluate the Assignment and Covenant as a "private Section 16(b) settlement,"

as Defendants dubiously suggest, Plaintiff's claim nonetheless withstands dismissal because Defendants have not demonstrated that a fair, adequate, or otherwise enforceable settlement exists. The Section 16(b) implications of the release are not even suggested in the SETTLEMENT AGREEMENT and whether or not the Defendants contend it extends to AZAR is a mystery.

While a company cannot *generally* "waive" the Section 16(b) prohibition on short swing trading or "release" its insiders from compliance with the rule, the company may "settle" a *particular Section 16(b) claim* against its insiders when liability is genuinely disputed and uncertain. But on its face, the SETTLEMENT AGREEMENT reflects an agreement to "settle" CAMBER'S and SEGUNDO's accounting differences, not AZAR'S outstanding Section 16(b) liability. There is no mention of Section 16(b) anywhere in the agreement, and no indication that the Section 16(b) implications of CAMBER's transactions were knowingly evaluated and intentionally relinquished. Where are the Board minutes specifically releasing the company Chairman and CEO from liability? Defendants have not established that the SETTLEMENT AGREEMENT is even potentially enforceable as an actual Section 16(b) settlement. S*ee, e.g. Kay v. Scientex Corp.*, 719 F.2d 1009, 1014 (9th Cir. 1983) (finding Defendant had failed to establish that purported settlement evinced specific intent to "waive Section 16(b) rights," without reaching question of whether such a waiver would be enforceable).

As Defendants have not established that CAMBER actually evaluated Defendants' potential Section 16(b) liability entering into the SETTLEMENT AGREEMENT, they have also failed to establish that any purported settlement of that liability was adequate. "The settlement by a corporation of a Section 16(b) claim against an insider for an inadequate amount will not preclude an action by a shareholder." *Volk, supra.*

The  Defendants' Brief makes allusion to *Donoghue v. Bohemian Investments*, 2016 WL 9738103 (D. Colo., September 30, 2016) in which a settlement was accepted as a reason for dismissal and Plaintiff's counsel in this case were plaintiff's attorneys in that one. The decision is simply bad law.  On behalf of our client we filed a notice of appeal whereupon a bankruptcy intervened.  Purely out of economic considerations the appeal was abandoned.  The decision is generally treated with disdain by the commentators.  Appended to this brief as Exhibit 1 is a copy of Alan Dye's (co-author of Romeo & Dye, Section 16 Treatise) reportage.

## CONCLUSION

Defendants' Motions to Dismiss should be denied.

Dated: September 18, 2018

                              Respectfully submitted,


                              _____
                              Miriam Tauber
                              885 Park Avenue 2A
                              New York, NY 10075
                              Telephone: (323) 790-4881
                              Email: MiriamTauberLaw@gmail.com

                              David Lopez, Esq.
                              171 Edge of Woods Road
                              P.O. Box 323
                              Southampton, NY 11969
                              Telephone:     (631) 287-5520
                              Email:  DavidLopezEsq@aol.com

                              *Attorneys for Plaintiff Aaron Rubenstein*

**CERTIFICATE OF SERVICE**

I, MIRIAM TAUBER, hereby certify that on September 18, 2018, I filed the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT by filing it with the Court using the Electronic Case Filing System, which caused service all counsel who have entered their appearances:

*/s/ Miriam Tauber*

Miriam Tauber
885 Park Avenue No. 2A
New York, NY 10075
Tel: (323) 790-4881
Email: MiriamTauberLaw@gmail.com

*Attorney for Plaintiff Aaron Rubenstein*